IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KRISTINA ZEMAITIENE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation, dba DESERET INDUSTRIES, and MELANIE PERRY, an individual,<br><br>Defendants. | **REPORT AND RECOMMENDATION: MOTION TO DISMISS (ECF No. 15)**<br><br><br>Case No.  2:16-cv-1271-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Pro se plaintiff Kristina Zemaitiene filed a Complaint against her former employer, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints dba Deseret Industries ("Deseret Industries"), for violations of Title VII of the Civil Rights Act of 1964 (Title VII) and the Americans with Disabilities Act of 1990 (ADA).  (Compl., ECF No. 3.)  Ms. Zemaitiene also sued her former supervisor at Deseret Industries, Melanie Perry, for intentional infliction of emotional distress.  (Id.)

Defendants Deseret Industries and Melanie Perry move the Court[1] to dismiss the portions of Ms. Zemaitiene's Complaint regarding disability discrimination based on a failure to accommodate, a hostile work environment, and the intentional infliction of emotional distress.  (Mot. to Dismiss ("Mot."), ECF No. 15.)  Having considered the

---

[1] On January 6, 2017, the District Judge referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 4.)

1

parties' briefing,[2] the undersigned RECOMMENDS the District Judge grant Deseret Industries' Motion as to the failure to accommodate cause of action but give Ms. Zemaitiene leave to plead additional facts regarding her exhaustion of administrative remedies.  The undersigned also RECOMMENDS the District Judge grant Deseret Industries' Motion as to the hostile work environment cause of action, finding Ms. Zemaitiene did not exhaust her administrative remedies.  Alternatively, the undersigned RECOMMENDS the District Judge grant the Motion to Dismiss the hostile work environment cause of action for failure to state a claim.  Additionally, the undersigned RECOMMENDS the District Judge deny the Motion to Dismiss the intentional infliction of emotional distress claim because the Complaint states sufficient facts to survive a Motion to Dismiss.

## BACKGROUND

Taking the factual allegations in the Complaint as true, Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), the following facts provide the background for this decision.  In November 2013, Ms. Zemaitiene began working for Deseret Industries at a nonprofit thrift store in Sandy, Utah.  (Compl. 3-4, ECF No. 3.)  Ms. Zemaitiene worked in the processing department of the store twenty-eight hours per week.  (Id. at 4-5.)  Ms. Perry supervised Ms. Zemaitiene and served as her job coach.  (Id. at 4.)  On March 22, 2014, Ms. Perry transferred Ms. Zemaitiene from the clothing to the domestics section of the processing department after Ms. Zemaitiene complained about her coworkers'

---

[2] The undersigned finds oral argument unnecessary and issues this Report and Recommendation based on the written memoranda.  See DUCivR 7-1(f).

religious proselytizing.  (Id. at 7-8.)  Ms. Zemaitiene "shares non-religious views."  (Id. at 7.)

In April and May 2014, Deseret Industries loaned Ms. Zemaitiene to its business partner, Globus Relief.  (Id. at 8.)  Ms. Zemaitiene's experience with Globus Relief proved contentious:  while there a co-worker sexually harassed her, and after leaving Ms. Zemaitiene had to file a wage claim to receive her full pay.  (Id. at 8-9.)

When Ms. Zemaitiene returned from Globus Relief, she continued to work in the domestics section of the processing department.  (Id. at 8.)  In July 2014, Ms. Zemaitiene filed a Charge of Discrimination and Retaliation.  (See id. at 10.)  In September 2014, Deseret Industries reassigned Ms. Zemaitiene back to the clothing section of the processing department.  (Id. at 8.)  On January 2, 2015, Ms. Zemaitiene ended her employment with Deseret Industries.  (Id. at 13.)

Ms. Zemaitiene's Complaint alleges Deseret Industries engaged in gender discrimination, disability discrimination, harassment, and retaliation for protected activities.  (Id. at 13-18.)  Ms. Zemaitiene also claims Ms. Perry intentionally inflicted emotional distress upon her.  (Id. at 18.)

In addition to the Complaint, the undersigned considers Ms. Zemaitiene's EEOC charges of discrimination, attached to the Motion.  "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007) (citing Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002)).  Ms. Zemaitiene references the charges in her Complaint, (Compl. 3, ECF No. 3), the charges are central to the claim, and neither side

disputes their authenticity, (see Mot. 10-11, ECF No. 15 (disputing implications of charges, not authenticity)).

Ms. Zemaitiene pursued relief through four separate charges with the Utah Anti-Discrimination and Labor Division (UALD) and the Equal Employment Opportunity Commission (EEOC).  (See Charge of Discrimination, July 28, 2014, (Charge #1), Exh. A, ECF No. 15-1 at 4; Charge of Discrimination, Oct. 27, 2014, (Charge #2), Exh. D, ECF No. 15-4 at 3; Charge of Discrimination, Nov. 3, 2014, (Charge #3), Exh. E, ECF No. 15-5 at 3; Charge of Discrimination, Jan. 12, 2015, (Charge #4), Exh. F, ECF No. 15-6 at 3.)  On September 21, 2016, the EEOC mailed Ms. Zemaitiene notice of her right to sue.  (Compl. 3, ECF No. 3.)

## STANDARD OF REVIEW

Courts construe pro se pleadings liberally and hold them to a "less stringent standard."  Smith v. United States, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005)). However, courts cannot act as advocates for pro se litigants, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure (Rules).  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (quoting Garrett, 425 F.3d at 840).  A pro se plaintiff's claims should survive a Rule 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Smith, 561 F.3d at 1096 (quoting Hall, 935 F.2d at 1110).

**DISCUSSION**

Deseret Industries argues this Court should dismiss Mr. Zemaitiene's failure to accommodate disability discrimination and hostile work environment claims for lack of subject matter jurisdiction because Ms. Zemaitiene failed to exhaust her administrative remedies as to these claims.  Additionally, Deseret Industries argues Ms. Zemaitiene's hostile work environment claim fails to state a claim upon which the Court may grant relief.  Similarly, Ms. Perry argues Ms. Zemaitiene fails to state an intentional infliction of emotional distress claim.

**A.  Exhaustion of Administrative Remedies**

Prior Tenth Circuit case law held, "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit."  Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005).  Deseret Industries applies this framework, positing, "[t]his Court does not have jurisdiction over Ms. Zemaitiene's second cause of action based on disability discrimination because she completely failed to exhaust her administrative remedies relative to this claim."  (Mot. 10, ECF No. 15.)  However, since Shikles, the Tenth Circuit has come in line with Supreme Court precedent holding that not all administrative exhaustion requirements serve as jurisdictional prerequisites.  See Gad v. Kan. State Univ., 787 F.3d 1032, 1039 (10th Cir. 2015) (determining Shikles' "logic… is at odd with the Supreme Court's instructions in subsequent cases and cannot be squared with the current law").  Rather, certain administrative exhaustion requirements, like verification as specifically held in Gad, serve as conditions precedent to suit and not as jurisdictional prerequisites.  Id. at 1041.  Requiring administrative exhaustion before

federal litigation serves:  "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim."  Jones v. U.P.S., 502 F.3d 1176, 1185 (10th Cir. 2007) (quoting Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994), abrogated on other grounds, Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003)); see also Gad, 787 F.3d at 1040 (describing twin purposes of exhaustion in the absence of it being a jurisdictional requirement).  A condition precedent places the burden on the plaintiff to plead compliance with the condition.  Gad, 787 F. 3d at 1041; see also Fed. R. Civ. P. 9(c) (requiring pleading to allege performance of all preconditions).

In determining whether an exhaustion requirement sets a jurisdictional bar, the Court must look to the statute itself, specifically its jurisdictional subsection.  Gad, 787 F.3d at 1038.  Title VII's jurisdictional provision does not include a requirement to file a claim with an administrative agency.  42 U.S.C. § 2000e-5(f)(3).  Furthermore, the Tenth Circuit cautions courts to "be careful in interpreting procedural rules to cause inadvertent forfeiture of rights."  Gad, 787 F.3d at 1038.  Where a defendant proceeds past the pleading stage to defend a case, a court can presume that the defendant agrees the charge fairly raised the claim pled.  If courts permitted a defendant to assert inartful language employed to initiate a charge as a defense after the motion to dismiss stage, they would punish lay people for not having obtained lawyers at the administrative charge stage.  Such a result contravenes Title VII's purpose of providing legal remedies to lay people. See Edelman v. Lynchburg Coll., 535 U.S. 106, 115 (2002).  Interpreting this requirement as a precondition instead of jurisdictional bar continues to advance the purpose of the rule requiring advance notice of claims.  See

6

Gad, 787 F.3d at 1038.  A defendant can waive a precondition but cannot waive jurisdiction.  Id. at 1035, 1039.  Thus an employer can still raise the issue at the pleading stage if it really did not have fair notice of the claim.  Id. at 1038-39.  Therefore, the undersigned considers the requirement as a precondition but not a jurisdictional bar.

Deseret Industries raises the failing in its Motion to Dismiss.  Therefore, Deseret Industries did not waive the precondition.  Where a defendant properly raises the absence of a precondition to suit, the court will dismiss the claim.  Id. at 1040.

When determining whether allegations fall within the scope of an EEOC charge, courts "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."  Jones, 502 F.3d at 1186.  Whether the charged party actually received notice does not dictate whether exhaustion occurred.  Id. at 1185.  The EEOC must inform parties of the pending charge, see 29 C.F.R. § 1601.14(a), but negligence in doing so may not penalize the plaintiff.  Jones, 502 F.3d at 1185; see also Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1321 (11th Cir. 2001) (finding EEOC's treatment of a questionnaire as a charge or not, not conclusive of exhaustion inquiry).  If a claimant "manifested his intent to activate the administrative process by filing a statement satisfying the EEOC's minimum requirements, see 29 C.F.R. §§ 1601.9, 1601.12(b), and the EEOC ultimately treated the statement as a charge … he has fulfilled the administrative filing requirement."  Jones, 502 F.3d at 1185.

**1. Ms. Zemaitiene Can Allege Facts Sufficient to Show She Activated the Administrative Process Regarding her Disability Discrimination Claim**

Deseret Industries argues Ms. Zemaitiene failed to exhaust her administrative remedies prior to her suing Deseret Industries for not accommodating her disability. (Mot. 10, ECF No. 15.)  Ms. Zemaitiene argues she intended the July 28, 2014 EEOC Charge of Discrimination to notify Deseret Industries of the failure to accommodate. (Mem. in Opp'n to Defs.' Mot. to Dismiss ¶ 20, ECF No. 18.)  The undersigned finds Ms. Zemaitiene can plead facts alleging she intended to commence the administrative process regarding this claim.  However, the face of the Complaint and the undisputed documents referenced therein do not disclose these facts.  Therefore, the undersigned RECOMMENDS the District Court grant Deseret Industries' Motion to Dismiss the disability discrimination claim and allow Ms. Zemaitiene leave to amend her Complaint to include further allegations establishing administrative exhaustion.

Deseret Industries argues all four charges of discrimination lack any reference to disability discrimination.  (Mot. 10, ECF No. 15.)  Indeed, on the first charge, Ms. Zemaitiene selected the boxes labeled "Religion" and "Retaliation", not "Disability." (Charge #1, ECF No. 15-1 at 4.)  Given space to elaborate on the discrimination, Ms. Zemaitiene describes a pattern of harassment based on her religious beliefs.  (Id.)  Ms. Zemaitiene specifically describes complaining to her supervisor, Melanie Perry, and then receiving a retaliatory transfer "to a more challenging job."  (Id.)

While not dispositive, failure to check the box corresponding with the alleged type of discrimination on the charge form creates a presumption that the plaintiff did not intend to bring claims represented by unchecked boxes.  See Gunnell v. Utah Valley

State Coll., 152 F.3d 1253, 1260 (10th Cir. 1998) (finding unchecked "Sex" box led to presumption against sexual harassment claim).  Thus, Ms. Zemaitiene's failure to check "Disability" creates the presumption that she did not intend to allege a disability discrimination claim.  The plaintiff may rebut such a presumption if a "reasonable reader" could understand the nature of the discrimination from the description of the charge included on the form.  Id.  Also, a claimant may supplement her charge and satisfy the notice requirement, so long as the supplement contains sufficient minimum details such as "the type of discrimination complained of, the alleged harasser, and an approximate time period."  Id.

Although Ms. Zemaitiene failed to check the box labeled "Disability" on the Charge of Discrimination, she marked the box labeled "Retaliation."  (Charge #1, ECF No. 15-1 at 4.)  In her description of the Charge, Ms. Zemaitiene described the retaliation as a transfer to a "more challenging" job within the company.  (Id.)  These allegations do not exist in a vacuum.  Under Ms. Zemaitiene's allegations within her Complaint, Deseret Industries knew why Ms. Zemaitiene described this transfer as "more challenging."  Specifically, Ms. Zemaitiene alleges she previously provided Ms. Perry with "her disability documentation", and her employment file noted her lifting restrictions.  (Compl. ¶ 36, ECF No. 3.)  When Ms. Perry ordered the transfer, Ms. Zemaitiene again brought her disability to Ms. Perry's attention and explained she could not perform the duties because of her physical disabilities.  (Id. ¶ 35.)

Ms. Zemaitiene further asserts her Response to Deseret Industries' Position Statement during the EEOC investigation included "new claims" regarding her disability. (Opp'n 15, ECF No. 18.)  In the Response, Ms. Zemaitiene indicates she included

failure to accommodate disability on her initial questionnaire with the UALD, and she

"filled out an additional disability questionnaire… to substantiate the claim."[3]  (Opp'n,

Exh. D, ECF No. 18-4 at 3.)  Further, she clearly states, "[t]he charge should be

amended to include Deseret Industries' liability for its discrimination based on disability."

(Id.)  Deseret Industries provides Ms. Zemaitiene's UALD intake questionnaire in its

Reply brief.  (Reply to Mem. Opp'n to Defs.' Mot. to Dismiss, Exh. A, ECF No. 22-1.)

Deseret Industries does not question the authenticity of the intake questionnaire or Ms.

Zemaitiene's Response to its Position Statement.  However, the Complaint makes no

reference to either the intake questionnaire or the Response.  (See Compl, ECF No. 3.)

Thus, these documents do not fit within the framework for consideration on a motion to

dismiss.  See Alvarado, 493 F.3d at 1215 (describing documents courts can consider on

a motion to dismiss without converting it to a summary judgment motion).  Neither party

offers a basis for the Court to consider these documents.  However, the Court can

review these documents in determining whether leave to amend would prove futile.  The

undersigned considers the questionnaire and Response only for the purpose of

determining whether Ms. Zemaitiene could amend her Complaint to allege facts

sufficient to allege she exhausted her administrative remedies as to her disability

discrimination claim.

Deseret Industries highlights the question, "[w]ere you discriminated

against/harassed because of a disability?" to which Ms. Zemaitiene answered "no."

(Reply 5, ECF No. 22 (quoting Exh. A at 2, ECF No. 22-1).)  The question further

---

[3] Neither side provides the supplemental disability questionnaire Ms. Zemaitiene
allegedly filed.

instructed that if answering yes, the claimant would need to file an ADA Questionnaire.

(Id.)  Farther down the intake questionnaire Ms. Zemaitiene writes,

> On March 6, 2014, I complained about the harassment to my job
> coach Melanie.  She told me that she would take care of my
> complaint.   Soon after my complaint, Melanie started teaching me
> how to process and price household items and transferred me to a
> Domestics Department.   My harassers remained in a clothes
> processing department.  **I asked Melanie to allow me to stay in my
> old job as handling of heavy household items in Domestics
> Department was too challenging for my sick heart.** She didn't
> grant my request telling me that she didn't have anyone else to do
> domestics which was untrue.

(Exh. A at 6, ECF No. 22-1 (emphasis added).)

The intake questionnaire sufficiently brings Ms. Zemaitiene's disability and

failure to accommodate theory before the EEOC, despite the presumption created

by Ms. Zemaitiene's failure to check the box indicating disability.  See Gunnell, 152

F.3d at 1260 (explaining presumption).  Within her questionnaire, Ms. Zemaitiene

creates a coherent narrative where she experiences religious discrimination at

work, complains to her supervisor, and as a result loses her disability

accommodation in retaliation.  Although Ms. Zemaitiene did not check the box

labeled "Disability", she may not have done so because her perceived

discrimination involved religion and her perceived retaliation – covered in a later

section of the questionnaire – involved disability.

Deseret Industries argues Ms. Zemaitiene's failure to check the "Disability" box

means she failed to exhaust her administrative remedies as to disability discrimination.

(Mot. 10, ECF No. 15.)  If the intake questionnaire did not provide clear notice, Ms.

Zemaitiene's Response did.  She clearly directed the EEOC to amend her charge to

include a claim for disability discrimination.  See accord Gunnell, 152 F.3d at 1258,

1260 (accepting supplement adding claims to charge prevents summary judgment on

scope of EEOC charge).  Whether Deseret Industries had notice of this addition does

not control the analysis, Jones, 502 F.3d at 1185; the issue is whether the EEOC

received enough information to discover and conciliate Ms. Zemaitiene's disability

discrimination claim.  Because none of this information appears in the Complaint, the

undersigned RECOMMENDS the Court grant the Motion to Dismiss.  However, given

the "[manifestation of Ms. Zemaitiene's] intent to activate the administrative

process" regarding her disability discrimination claim in the documents attached to

the briefing, the undersigned RECOMMENDS the District Court grant Ms.

Zemaitiene leave to amend her Complaint to explain how she exhausted

administrative remedies on the disability discrimination claim.

### 2.   Ms. Zemaitiene Failed to Exhaust Administrative Remedies as to her Hostile Work Environment Claim

Deseret Industries argues that this Court lacks subject matter jurisdiction over

Ms. Zemaitiene's third cause of action, hostile work environment, because Ms.

Zemaitiene failed to exhaust her administrative remedies.  (Mot. 10-11, ECF No. 15.)

Ms. Zemaitiene counters that her Response to Deseret Industries' EEOC Position

Statement supplemented her charge sufficient to establish administrative exhaustion.

(Opp'n 15, ECF No. 18.)  Ms. Zemaitiene argues the EEOC, once aware of the claims

contained within the Response, held a duty to investigate those claims and notify

Deseret Industries.  (Id.)  The undersigned agrees with Ms. Zemaitiene that had she

properly brought claims before the EEOC, the EEOC's failure to notify Deseret

Industries properly would not impair her ability to now litigate those claims.  See Jones,

502 F.3d at 1185 (holding notice to charged party does not control administrative

exhaustion inquiry).  However, the undersigned disagrees that Ms. Zemaitiene brought a claim of hostile work environment before the EEOC.

A claimant must include certain minimum allegations in a charge of discrimination.  Gunnell, 152 F.3d at 1260.  The Code of Federal Regulations indicates a sufficient charge includes "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12 (describing contents of a Title VII charge).  A charge that fails to meet these minimum requirements fails to provide the EEOC opportunity to investigate, foreclosing the pathway to administrative exhaustion.  See Jones, 502 F.3d at 1185 (holding administrative exhaustion allows "the EEOC an opportunity to conciliate the claim").

Ms. Zemaitiene's third cause of action describes "ongoing harassment against her by Ms. Perry."  (Compl. ¶ 84, ECF No. 3.)  Upon review of the four charges filed by Ms. Zemaitiene, none describes harassment or a hostile work environment created by her supervisor Ms. Perry.  (See Charge #1, ECF No. 15-1 at 4; Charge #2, ECF No. 15-4 at 3; Charge #3, ECF No. 15-5 at 3; Charge #4, ECF No. 15-6 at 3.)  Charge #1 describes religious-based harassment by coworkers followed by retaliation; charge #2 describes a retaliation claim premised on reduced hours; charge #3 describes gender discrimination by Deseret Industries through disparate treatment; and charge #4 describes the sexual harassment and retaliation that occurred at Globus Relief.  (Id.)  Charge #1 identifies Ms. Perry's—Ms. Zemaitiene's job coach's— retaliation taken because Ms. Zemaitiene complained of religious discrimination by her coworkers.  (See Charge #1, ECF No. 15-1 at 4.)  Retaliation constitutes a claim distinct from hostile work environment harassment both in the case law and in Ms. Zemaitiene's

Complaint itself.  (See Compl. 16, ECF No. 3 (asserting fourth cause of action as retaliation—not challenged in this Motion).)  A reasonable reader analyzing all four charges Ms. Zemaitiene made would come away unaware of any intention to assert a hostile work environment claim against her immediate supervisor.  The only references to Ms. Perry contained in the charges merely allege her as the enactor of retaliatory actions.  Based on the information presented in the four charges, "the scope of the administrative investigation that can reasonably be expected to follow" does not extend to a hostile work environment created by Ms. Perry.  See MacKenzie v. City & Cty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).

Ms. Zemaitiene asserts her Response to Deseret Industries' Position Statement revealed "new claims not presented in her charges," and the Response suffices to establish administrative exhaustion.  (Opp'n 15, ECF No. 18.)  However, Ms. Zemaitiene's Response does not disclose a hostile work environment claim for Ms. Perry's behavior.  (See Opp'n, Exh. D, ECF No. 18-4.)  Rather, the Response continues to talk in terms of retaliation by Ms. Perry.  (Id.)

Ms. Zemaitiene did not present the claim of hostile work environment before the EEOC for investigation properly, and therefore Ms. Zemaitiene failed to exhaust her administrative remedies.  The undersigned RECOMMENDS the District Court find Ms. Zemaitiene failed to satisfy the administrative exhaustion requirement on her hostile work environment cause of action and grant Deseret Industries Motion to Dismiss.

**B.  Sufficiency of the Allegations**

Alternately, Deseret Industries seeks dismissal of Ms. Zemaitiene's hostile work environment cause of action for failure to state a claim upon which the Court may grant

relief.  (Mot. 12-13, ECF No. 15.)  Ms. Perry seeks dismissal of Ms. Zemaitiene's

intentional infliction of emotional distress claim for the same reason.  (Id. at 13-15.)

To survive a Rule 12(b)(6) motion, Ms. Zemaitiene must "'set forth plausible

claims' animating the elements of her causes of action."  See Burnett v. Mortg. Elec.

Registration Sys., Inc., 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting Khalik v. United

Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012)).  A pro se plaintiff's claims will survive

"despite the plaintiff's failure to cite proper legal authority, his confusion of various legal

theories, his poor syntax and sentence construction, or his unfamiliarity with pleading

requirements."  Smith, 561 F.3d at 1096 (quoting Hall, 935 F.2d at 1110).  Should a

plaintiff's original complaint miss "important element[s] that may not have occurred to

him," a court will grant leave to amend.  Hall, 935 F.2d at 1110.  After providing an

opportunity to amend, a court may properly dismiss with prejudice if further chances to

amend would prove "futile."  Gee v. Pacheco, 627 F.3d 1178, 1195 (10th Cir. 2010).

Courts engage in a context specific inquiry, utilizing "judicial experience and

common sense," to determine whether a plaintiff's claims rise to the level of plausibility.

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  "[C]onclusory allegations without

supporting factual averments are insufficient to state a claim on which relief can be

based."  Hall, 935 F.2d at 1110.  Courts will disregard legal allegations masquerading as

facts.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478

U.S. 265, 286 (1986)).  If a pro se party has not alleged sufficient facts to support a

legal theory, courts will not fill in the factual gaps.  Smith, 561 F.3d at 1096 (citing

Whitney v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

### 1. Ms. Zemaitiene Fails to State a Plausible Hostile Work Environment Claim Motivated by Retaliation

Ms. Zemaitiene alleges that "M[s]. Perry's harassing conduct towards Ms. Zemaitiene was triggered by Ms. Zemaitiene's protected opposition to discriminatory employment practices and created hostile work environment for Ms. Zemaitiene resulting in a reduction of Ms. Zemaitiene's working hours and thus, her pay which constitutes an adverse employment action." (Compl. 15-16, ECF No. 3 ("Against Deseret Industries for Harassment").) Deseret Industries argues Ms. Zemaitiene fails to allege the existence of a hostile work environment, defined by the Tenth Circuit as a "workplace … permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Morris v. City of Colorado Springs, 666 F.3d 654, 664 (10th Cir. 2012) (quoting Hall v. U.S. Dep't of Labor, 476 F.3d 847, 851 (10th Cir. 2007)). Deseret Industries views the sum of Ms. Zemaitiene's allegations as insufficiently severe or pervasive to create such an environment. (Mot. 13, ECF No. 15.)

In her Opposition, Ms. Zemaitiene argues Ms. Perry engaged in "illegal harassing behavior… motivated by her animus towards Zemaitiene for her engaging in protected activities." (Opp'n 16-17, ECF No. 18.) She further requests "[i]f this Court is not inclined to see Zemaitiene's working conditions as sufficiently hostile, it should consider an emerging trend to punish employers for a so-called retaliatory harassment." (Id. at 17.) The language Ms. Zemaitiene adopts in defense of her claim closely mirrors the elements of a retaliation claim: (1) protected activity, (2) adverse consequences, and (3) a causal connection between the two. Proctor v. U.P.S., 502 F.3d 1200, 1208 (10th

16

Cir. 2007).  Even Ms. Zemaitiene's alternate theory of "retaliatory harassment" derives

from case law describing retaliation claims.  See Gunnell, 152 F.3d at 1264 ("Under our

circuit precedent we believe that co-worker hostility or retaliatory harassment, if

sufficiently severe, may constitute 'adverse employment action' for purposes of a

retaliation claim.").

In addition, Ms. Zemaitiene misreads the two cases she cites to support her

harassment theory.  Both Martinelli v. Penn Millers Ins. Co., 269 F. App'x 226, 230 (3d

Cir. 2008) (unpublished), and E.E.O.C. v. Chrysler Grp., LLC, No. 08-C-1067, 2011 WL

693642, at *8-11 (E.D. Wis. Feb. 17, 2011) (unpublished) reflect retaliation causes of

action claiming harassment as the adverse employment action, not a harassment cause

of action motivated by retaliation.  Ms. Zemaitiene asserts a retaliation cause of action

that Deseret Industries concedes she sufficiently pled, implicitly through omission from

the Motion to Dismiss.  The undersigned declines to find a new cause of action for

harassment motivated by retaliation.

### 2.  Ms. Zemaitiene Fails to State a Plausible Hostile Work Environment Claim Motivated by Protected Class.

As to Ms. Zemaitiene's standalone claim of hostile work environment, Ms.

Zemaitiene fails to allege facts sufficient to state a claim.  In making this determination

courts consider the totality of circumstances, including how often discriminatory conduct

occurred, the type of conduct, physicality, and how the conduct impacted the claimant's

ability to work.  Chavez v. New Mexico, 397 F.3d 826, 832-33 (10th Cir. 2005).  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (quoting

Twombly, 550 U.S. at 556).  Thus, the undersigned considers whether the Complaint

alleges facts that make plausible Ms. Zemaitiene's claim that Ms. Perry's intimidation, ridicule, and insult altered Ms. Zemaitiene's conditions of employment.  See Morris, 666 F.3d at 664 (defining a hostile work environment).

The Tenth Circuit "'recognize[s] that "Title VII does not establish a general civility code for the workplace"' and that a plaintiff may not predicate a hostile work environment claim on 'the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces.'"  Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015) (quoting Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 957 (10th Cir. 2012) (quoting Morris, 666 F.3d at 663-64)).  Frequency or severity of the occurrences may suggest pervasive harassment based on a protected class.  Morris, 666 F.3d at 666 (analyzing Tenth Circuit cases regarding pervasive harassment at the summary judgement stage); Hare v. Donahoe, 608 F. App'x 627, 630–31 (10th Cir. 2015) (unpublished) (requiring allegations of severe or pervasive harassment at the motion to dismiss stage); Asebedo v. Kansas State Univ., 559 F. App'x 668, 670-71 (10th Cir. 2014) (unpublished) (finding complaint's allegations sufficiently severe to survive a motion to dismiss).

Lay people frequently misunderstand the nature of a hostile work environment claim and fail to recognize the need for the harassment to result from their membership in a protected class.  A work environment that feels hostile, absent a connection to a protected class, has no recourse under Title VII.  See Lounds, 812 F.3d at 1222 (requiring membership in a protected group to establish a prima facie claim); 42 U.S.C. § 2000e-2 (prohibiting employment discrimination "because of such individual's race, color, religion, sex, or national origin").  Of course, "'[f]acially neutral abusive conduct

can support a finding of [racial] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially]-discriminatory conduct.'" Lounds, 812 F.3d at 1224 (quoting Hernandez, 684 F.3d at 960 (alterations in original) (quoting O'Shea v. Yellow Tech Servs., Inc., 185 F.3d 1093, 1097(10th Cir. 1999))).

Ms. Zemaitiene identifies two instances where Ms. Perry made derogatory remarks related to protected classes.  (Compl. ¶¶ 44, 47, ECF No. 3.)  Once, Ms. Perry told Ms. Zemaitiene her country was "full of terrorists," mistakenly assuming Ms. Zemaitiene was Russian and not acknowledging the error when Ms. Zemaitiene pointed out she came from Lithuania.  (Id. at ¶ 44.)  While non-religious herself, Ms. Zemaitiene also complains that Ms. Perry once made fun of a Muslim coworker's religion.  (Id. at ¶¶ 29, 47.)

The Complaint also includes allegations that Deseret Industries and Ms. Perry disfavored women as demonstrated by limiting their use of bathrooms and their choices as to days off but not men's use or choices.  (Id. at ¶¶ 21-22, 26-28.)  Additionally, the Complaint alleges a coworker sprayed cleaning solution in Ms. Zemaitiene's face that Ms. Perry took the complaint lightly, chalking the behavior up to flirtation.  (Id. at ¶ 43.)

Ms. Zemaitiene also alleges a number of incidents not obviously connected to any protected class.  She reports that Ms. Perry gave Ms. Zemaitiene one fewer free lotion sample than another coworker, that Ms. Perry openly discussed her dislike of another job coach, and that Ms. Perry hit Ms. Zemaitiene on the head with a piece of clothing.  (Compl. ¶¶ 45, 48, 52, ECF No. 3.)  Additionally, Ms. Zemaitiene alleges Ms.

Perry purposefully scheduled training when Ms. Zemaitiene could not attend and cancelled Ms. Zemaitiene's quarterly development discussion.  (Id. at ¶¶ 53, 55.)

Lastly, Deseret Industries suspended Ms. Zemaitiene from her job and prohibited her from entering any of its stores after she tried to protect a customer she perceived as being assaulted in the parking lot.  (Id. at ¶¶ 62-72.)  Ms. Zemaitiene's Complaint never alleges what roll Ms. Perry played in this incident other than hearing about it.  (Id.)

Ms. Zemaitiene never makes clear if her harassment resulted from her non-religious affiliation, her national origin, or her gender.  Moreover, the facts she alleges do not demonstrate a pattern of bad behavior related to one or all of these categories. For example, Ms. Zemaitiene gives no context in which to understand the incident where Ms. Perry hit her with a piece of clothing.  The comments regarding other employees do not suggest a hostile work environment toward Ms. Zemaitiene.  Also, the culminating incident resulting in Ms. Zemaitiene's suspension appears unrelated to any prior incident.  One comment about Ms. Zemaitiene's national origin fails to allege discrimination on that basis.  The restroom restriction provides a basis for a gender discrimination claim but does not by itself suggest a hostile environment based on gender.  Ms. Perry's reaction to an assault on Ms. Zemaitiene by a coworker, while less than optimal does not reflect the severity or frequency of conduct needed to plead a hostile work environment claim.

Therefore, if the District Court determines Ms. Zemaitiene exhausted her administrative remedies and can bring her hostile work environment claim, the undersigned nonetheless RECOMMENDS granting the Motion to Dismiss Ms. Zemaitiene's hostile work environment claim for failure to state a claim.

### 3.  Ms. Zemaitiene States a Plausible Intentional Infliction of Emotional Distress Claim

Ms. Zemaitiene's fifth cause of action alleges "Ms. Perry intentionally engaged in offensive conduct towards Ms. Zemaitiene … with the purpose of inflicting emotional distress on Ms. Zemaitiene or she should have known that emotional distress would result."  (Compl. ¶¶ 100-101, ECF No. 3.)  Ms. Perry argues that Ms. Zemaitiene's allegations fall short of the egregious conduct required to plead an intentional infliction of emotional distress claim.  (Mot. 14, ECF No. 15.)  Specifically, Ms. Perry notes intentional infliction of emotion distress arises from intentional conduct "a reasonable person normally constituted would be unable to adequately cope with" emotionally.  (Id. (quoting Johnston v. Davis Sec., Inc., 217 F. Supp. 2d 1224, 1232 (D. Utah 2002).)

Utah law requires four elements to state an intentional infliction of emotional distress claim successfully:

> (i) the [defendant's] conduct [complained of] was outrageous and intolerable in that it offended ... generally accepted standards of decency and morality; (ii) [the defendant] intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) [the plaintiff] suffered severe emotional distress; and (iv) [the defendant's] conduct proximately caused [the] emotional distress.

Prince v. Bear River Mut. Ins. Co., 2002 UT 68, ¶ 37, 56 P.3d 524, 535–36 (alterations in original) (quoting Retherford v. AT & T Comm., 844 P.2d 949, 970–71 (Utah 1992)).

Ms. Zemaitiene's Complaint contains the following allegations of offensive conduct by Ms. Perry:  arbitrarily mandating a day-off requiring longer days and harming her health, unnecessarily limiting the times Ms. Zemaitiene could use the restroom, transferring Ms. Zemaitiene to a job that compromised her health as retaliation for complaining about religious discrimination, accusing  Ms. Zemaitiene of being from a

country "full of terrorists", failing to address the complaint about the cleaning spray incident properly, giving Ms. Zemaitiene fewer free samples than other employees, reducing Ms. Zemaitiene's hours, scheduling training when Ms. Zemaitiene could not attend, canceling Ms. Zemaitiene's quarterly development discussion, and hitting Ms. Zemaitiene on the head with a piece of clothing.  (Compl. ¶¶ 21, 23, 26, 35, 36, 43, 44, 45, 49-50, 52, 53, 55, ECF No. 3.)

"To be considered outrageous, 'the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair.' …  Conduct 'is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal.'"  Bennett v. Jones, Waldo, Holbrook & McDonough, 2003 UT 9, ¶ 64, 70 P.3d 17, 32 (quoting Franco v. The Church of Jesus Christ of Latter-day Saints, 2001 UT 25, ¶ 28, 21 P.3d 198, 207). However, conduct supporting a sexual harassment claim will also support a claim for intentional infliction of emotional distress.  Retherford, 844 P.2d at 978; see accord Judkins v. Anderson Drilling, Inc., No. 2:12cv421DAK, 2014 WL 6682422, *3 (D. Utah Nov. 25, 2014) (unpublished).

Ms. Zemaitiene's allegations include claims of gender discrimination through disparate treatment and disability discrimination through failing to accommodate and retaliation for reporting discriminatory conduct.  Indeed, Deseret Industries recognizes Ms. Zemaitiene's Complaint successfully pleads a claim for gender based employment discrimination and a claim for retaliation for filing an EEOC charge, as evidenced by the partial motion to dismiss.  The Utah Supreme Court has found the discrimination laws reflective of "generally accepted standards of decency and morality."  See Retherford,

844 P.2d at 978 ("stating forcefully that any other conclusion would amount to an intolerable refusal to recognize that our society has ceased seeing sexual harassment in the work place a playful inevitability that should be taken in good spirits.")  Under Utah case law, Ms. Zemaitiene has pled sufficient facts to survive a Motion to Dismiss on her intentional infliction of emotional distress claim.  Therefore, the undersigned RECOMMENDS the District Court deny the Motion to Dismiss the intentional infliction of emotional distress claim.

## RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS the District Judge grant Deseret Industries' Motion to Dismiss as to the disability discrimination cause of action and  allow Ms. Zemaitiene the opportunity to replead the facts related to her exhaustion of her administrative remedies on this claim.  The undersigned further RECOMMENDS the District Judge grant Deseret Industries' Motion to Dismiss as to the hostile work environment cause of action of action because Ms. Zemaitiene did not exhaust her administrative remedies on this claim.  Should the Court determine Ms. Zemaitiene exhausted her administrative remedies regarding the hostile work environment cause of action, the undersigned nonetheless RECOMMENDS dismissal of the hostile work environment claim for failure to state a claim.  The undersigned also RECOMMENDS the District Court deny the Motion to Dismiss the intentional infliction of emotional distress cause of action because the Complaint states a claim.

The court will send copies of this Report and Recommendation to the parties and hereby notifies them of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the

Clerk of the Court, pursuant to 28 U.S.C. § 636(b) and Rule 72(b), within fourteen (14) days of service thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 17th day of August 2017.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge